UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:09-CR-14 |
| | ) | (VARLAN/SHIRLEY) |
| SHABAAKA ORAN AWOLOWO, | ) | |
| ARRIEN NEAL KENEBREW, and | ) | |
| LARRY W. SHIPE, | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. Defendant Shabaaka Oran Awolowo ("the Defendant") was charged on March 17, 2009, in a superceding Indictment [Doc. 28], with one count of conspiracy to violate 18 U.S.C. § 2113(a) and -(d), three counts of violation of 18 U.S.C. § 2113(a) and -(d), and three counts of violation of 18 U.S.C. §§ 2 and 2113(a) and -(d).

On October 13, 2009, the Defendant, through counsel Attorney A. Philip Lomonaco, filed a Motion to Suppress the Fruits of a Traffic Stop [Doc. 50] and Brief in Support [Doc. 51]. The Defendant's motion asks the Court to suppress all items that were discovered during a police search of the vehicle that the Defendant was driving at the time of his arrest on January 15, 2009. The motion contends that there was no legal basis for the search of the vehicle. First, the Defendant argues that there were no facts that provided police with probable cause for a search of the vehicle. The Defendant argues specifically that the discovery of some "crumbs or marijuana seeds" in his pocket during a search of his person did not provide the police with probable cause to search the

vehicle. [Doc. 51 at 3]. The Defendant disputes the Government's factual allegation that police detected the odor of marijuana emanating from the vehicle. [Doc. 51 at 3]. The Defendant argues that no other facts existed to properly form the basis of probable cause for a search of the vehicle.

Next, the Defendant argues that police did not have consent to search the vehicle. The Defendant alleges that police never asked him or the vehicle's passenger, Arrien Neal Kenebrew, for permission to search the vehicle. [Doc. 51 at 2]. Finally, the Defendant argues that the search of the vehicle cannot be justified as a search incident to arrest under the rule of Arizona v. Gant, 129 S.Ct. 1710 (April 21, 2009), because (1) the Defendant himself was already in custody and in the back of a police cruiser at the time of the search; (2) Mr. Kenebrew was not placed under arrest at all; and (3) a valid "search incident to arrest" is limited to a search of the passenger compartment of an arrestee's vehicle and any container found therein, but the search of the vehicle in this case included the search of a bag that was located "in the rear of the vehicle, *not* within the passenger compartment."[1] [Doc. 51 at 3].

The Government argues in response that the search of the vehicle was within the automobile exception to the warrant requirement. [Doc. 53 at 1]. The Government alleges that police smelled the odor of marijuana emanating from within the vehicle and observed marijuana smoke escaping from the vehicle. [Doc. 53 at 2]. The Government argues that the detection of marijuana odor provided police with probable cause to search the vehicle. [Doc. 53 at 4]. The Government also alleges that the Defendant voluntarily consented to the search of the vehicle. [Doc. 53 at 1].

---

[1] The Government states in its response that "Arizona v. Gant is inapplicable to this case." [Doc. 53 at 10]. The Court agrees. Because the Government is not attempting to justify the search of the vehicle driven by the Defendant as a "search incident to arrest," the Court declines to analyze the facts in this case under Gant.

2

The parties appeared before the undersigned for hearing on the Defendant's motion on November 12, 2009. Assistant United States Attorney Kelly Ann Norris was present representing the Government. Attorney Lomonaco represented the Defendant, who was also present. At the hearing, the Government called two witnesses, Patrol Officer Bradley Lowe and Patrol Officer Robert Berglof, and introduced one exhibit, a police audio and video recording made during the course of the traffic stop and subsequent arrest of the Defendant and search of the vehicle [Exhibit 1].[2] The Defendant did not present any evidence and did not offer any argument. Instead, the Defendant stood on the arguments presented in his motion [Doc. 50] and supporting brief [Doc. 51] and confined himself to cross-examination of the Government's two witnesses. The Defendant agreed with the Government on one critical point of law: that the detection of marijuana odor emanating from within a vehicle provides police with probable cause to search that vehicle. See Section II, part A, *infra*. At the conclusion of the hearing, Attorney Lomonaco requested additional time to review Exhibit 1. The Court granted Attorney Lomanaco and the Defendant until November 16, 2009, to review the exhibit and to file any supplemental memoranda. No supplemental memoranda were received by the Court.

**I. FACTS**

    **A.**     **Facts established by Officer Lowe's testimony**

On January 15, 2009, at approximately 9:40 a.m., Patrol Officer Bradley Lowe of the Pigeon

---

[2] The video recording was captured by the camera mounted in Patrol Officer Bradley Lowe's police cruiser. The audio recording was captured by an audio recorder that Officer Lowe kept in a pocket. The audio and video are synchronized in the digital file proffered by the Government as Exhibit 1.

Forge Police Department observed the Defendant driving a white Toyota 4-Runner on the U.S. Route 441 Scenic Parkway near Traffic Light # 3 in Pigeon Forge, Tennessee. Officer Lowe testified that he observed the Defendant driving erratically and speeding at 52 m.p.h. in a 35 m.p.h. zone. Officer Lowe "turned on" the 4-Runner and pursued it, intending to make a traffic stop. Officer Lowe pursued the 4-Runner until it turned from the Parkway into the parking lot of the Willowbrook Lodge Motel. Officer Lowe followed the 4-Runner into the parking lot and parked his cruiser behind the parking space into which the Defendant had driven the 4-Runner. Very quickly thereafter, Officer Robert Berglof of the Pigeon Forge Police Department arrived on the scene to back up Officer Lowe.

Officer Lowe exited his cruiser and approached the driver's side of the parked 4-Runner. Officer Lowe testified that as he approached the vehicle, the Defendant remained seated in the driver's seat. Officer Lowe testified that he approached the front driver's side door by walking along the 4-Runner starting at the rear, at a distance of only three to four inches away from its side. Officer Lowe stated that just before he reached the front driver's side door, the Defendant opened it. He stated that he was standing "at the door post"–as close as possible to the door without being in the path of its swing–when the Defendant opened the door. Officer Lowe stated that no words were exchanged between himself and the Defendant prior to the opening of the front driver's side door.

Officer Lowe testified that he observed smoke escaping from within the passenger compartment of the 4-Runner as soon as the Defendant opened the front driver's side door. Officer Lowe stated that the smoke smelled like "burnt marijuana." He stated that he is certified as a Drug Recognition Expert ("DRE") and that "there was no doubt in my mind at all" that the smoke

4

emanating from within the 4-Runner smelled of burnt marijuana. Officer Lowe also stated that he smelled the odor of "non-burnt, green marijuana" emanating from within the 4-Runner. Officer Lowe explained that his training and experience have enabled him to distinguish between the "very distinct smells" of "green marijuana" and "burnt marijuana." Officer Lowe unequivocally testified that he smelled *both* odors emanating from within the 4-Runner.

Speaking through the open front driver's side door, Officer Lowe asked the Defendant how much marijuana was in the vehicle. The Defendant answered that he had "smoked it all." Officer Lowe continued to question the Defendant through the open vehicle door. At some point, either upon Officer Lowe's request or of his own accord, the Defendant stepped out of the 4-Runner. During further questioning, the Defendant admitted to Officer Lowe that he had a suspended driver's license and that he probably had marijuana seeds on his clothing.

Officer Lowe checked the Defendant's identifying information against the police database and discovered that there was an outstanding warrant for the Defendant's arrest for a probation violation. Officer Lowe placed the Defendant under arrest and searched his person. Officer Lowe found marijuana seeds and residue in one of the Defendant's pockets, a stun-gun in a holster strapped to the front of the Defendant's waistband, and $4,073 in cash spread between three of the Defendant's pockets. After arresting and searching the Defendant and asking Officer Berglof to remove the passenger, Arrien Neal Kenebrew, from the 4-Runner, Officer Lowe searched the vehicle. Officer Lowe stated that he began his search by opening the rear passenger side door and looking in the rear passenger seat area. Officer Lowe testified that he saw the backpack that Officer Berglof had mentioned to him, see part B *infra*, and began to search it. Officer Lowe stated that the backpack contained a "bomb-like device" that he believed to be a bomb or other "explosive device."

5

Officer Lowe immediately ceased his search and moved away from the 4-Runner, directing Officer Berglof to do the same with Kenebrew. Officer Lowe then called for backup officers with bomb training. Neither Officer Lowe nor Officer Berglof resumed searching the 4-Runner at any point. Ultimately, police discovered that the backpack found in the 4-Runner contained multiple wigs and a hoax bomb-like device.

### B. Facts established by Officer Berglof's testimony

Just before Officer Lowe observed the Defendant speeding in the 4-Runner and "turned on" him, another officer of the Pigeon Forge Police Department, Patrol Officer Robert Berglof, spotted the 4-Runner "weaving in and out of traffic" on the U.S. Route 441 Scenic Parkway. Officer Berglof immediately began pursuing the 4-Runner to make a traffic stop for erratic driving. Officer Berglof pursued the 4-Runner until it turned from the Parkway into the parking lot of the Willowbrook Lodge Motel. At that point, Officer Berglof lost sight of the 4-Runner and "overshot" by driving past the entrance to the motel parking lot. Officer Berglof turned his cruiser around and drove back to the motel parking lot. During the period of time it took Officer Berglof to turn around and arrive at the parking lot, Officer Lowe followed the 4-Runner into the lot and initiated contact with the Defendant through the open front driver's side door. Officer Berglof testified that he arrived at the Defendant's parked 4-Runner approximately "forty-five seconds to a minute" after Officer Lowe's arrival.

While Officer Lowe was questioning the Defendant, Officer Berglof approached the front passenger side of the 4-Runner. The passenger, Arrien Neal Kenebrew, rolled down the front passenger side window to speak with Officer Berglof. According to Officer Berglof's testimony,

6

Officer Lowe was still standing on the other side of the 4-Runner questioning the Defendant through the open front driver's side door at the time Kenebrew lowered his window. Officer Berglof stated that he immediately smelled a "very strong" odor of marijuana emanating from within the 4-Runner as soon as Kenebrew lowered the front passenger side window. Officer Berglof testified that his experience and his police narcotics identification training enabled him to identify marijuana by both sight and smell. He testified that his is very familiar with marijuana's "unique smell" because he has made "hundreds" of arrests for marijuana possession. Officer Berglof stated that he was certain that he smelled the odor of marijuana emanating from within the 4-Runner.

Officer Berglof also testified that while looking through the open front passenger side window during his conversation with Kenebrew, he spotted a backpack sitting on the rear bench seat of the 4-Runner. Officer Berglof testified that he informed Officer Lowe about spotting the backpack.

### C. The Government's allegation that the Defendants consented to a search

The Government alleges that at some point during the questioning of the Defendant and Kenebrew, both men consented to a search of the 4-Runner. Specifically, the Government relies upon Officer Lowe's testimony that the Defendant, while standing outside of the 4-Runner and before being arrested, gestured over his shoulder in the direction of the vehicle and said to Officer Lowe, "Search it."[3] The Government also relies on Officer Berglof's testimony that Kenebrew told

---

[3] The Defendant's gesture was captured by the video recorder mounted in Officer Lowe's vehicle. At the November 12 hearing, the Exhibit 1 video recording was played and the Defendant could be seen making a very quick gesture at around the 9:53:57 mark. The Defendant's intent was not discernible from the abbreviated gesture. Officer Lowe testified that at the moment the Defendant made the gesture, he simultaneously said, "Search it," in reference

7

him: "I don't have any problem with you searching the vehicle. I just don't want it towed."

The Defendant disputes the Government's allegation that consent was given for the search of the 4-Runner, but at the hearing he offered no evidence to rebut the police officers' testimony. Presumably, the Defendant simply relies on the fact that neither he nor Kenebrew can be heard on the Exhibit 1 audio recording saying anything from which consent to a search could be inferred.

## II. ANALYSIS

The Fourth Amendment protects citizens against unreasonable searches or seizures. U.S. Const. amend IV. The basic rule for addressing the reasonableness of a warrantless search is that "searches conducted outside the judicial process, without prior approval by a judge or magistrate, are *per se* unreasonable under the Fourth Amendment–subject only to a few specifically established and well-delineated exceptions." Arizona v. Gant, 129 S.Ct. 1710, 1716 (April 21, 2009) (quoting Katz v. United States, 389 U.S. 347 (1967)). Two such exceptions are implicated in this case. First, the Government argues that the detection of the odor of marijuana emanating from within the vehicle driven by the Defendant provided the police with probable cause to search the vehicle without a warrant pursuant to the recognized automobile exception to the warrant requirement. See Maryland v. Dyson, 527 U.S. 465, 466 (1999) ("there is an exception to [the warrant] requirement for searches of vehicles") (citing Carroll v. United States, 267 U.S. 132, 153 (1925)); United States v. Mans, 999 F.2d 966, 969 (6th Cir.), cert. denied, 510 U.S. 999 (1993) (when "police have probable cause to believe that a vehicle contains contraband they may search the entire vehicle and any contents

---

to the 4-Runner. While the Defendant can be seen on the video recording at that moment moving his lips as if speaking, the Defendant's voice cannot be heard on the audio recording at the corresponding time.

8

located within it"); Pennsylvania v. Labron, 518 U.S. 938, 940 (1996) ("if a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more"). Second, the Government argues that both the Defendant and Mr. Kenebrew consented to a police search of the vehicle in which they were traveling. See United States v. Carr, 187 Fed. App'x 602, 606 (6th Cir. 2006) ("The Fourth Amendment prohibits searches without a warrant or probable cause with few exceptions, one of which is valid consent."). The Court addresses in turn each of the Government's proffered justifications for the warrantless search of the Defendant's vehicle.

### A. Probable cause

"Under the well-known automobile exception, a warrantless search of a vehicle that has been stopped lawfully is permissible if the search is based upon probable cause." United States v. Crumb, 287 Fed. App'x 511, 513 (6th Cir. 2008) (citing United States v. Ross, 456 U.S. 798, 823 (1982)). An investigative traffic stop of a vehicle is lawful if it is supported by reasonable suspicion of an ongoing violation of any crime. Crumb, 287 Fed. App'x at 513; see United States v. Simpson, 520 F.3d 531, 541 (6th Cir. 2008) ("a seizure for an ongoing violation of *any* crime–no matter how minor–is governed by the standard of reasonable suspicion") (emphasis original). Any subsequent warrantless search of the stopped vehicle must be supported by probable cause. Id. "Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion, and is found to exist when there is a fair probability that evidence of a crime will be located on the premises of the proposed search." United States v. Jackson, 470 F.3d 299, 306 (6th Cir. 2006).

9

The Court of Appeals for the Sixth Circuit has consistently held that "the detection of a narcotic's odor, by itself, is sufficient to provide probable cause to conduct a lawful search of a vehicle." Crumb, 287 Fed. App'x at 514 (internal citations omitted). More specifically, the Court of Appeals has consistently held that a police officer's detection of the odor of marijuana emanating from within a vehicle is sufficient to provide probable cause to conduct a warantless search of that vehicle for marijauna. See, e.g., United States v. Puckett, 422 F.3d 340, 343 (6th Cir. 2005); United States v. Elkins, 300 F.3d 638, 659 (6th Cir. 2002); United States v. Garza, 10 F.3d 1241, 1245 (6th Cir. 1993). "If there is probable cause to believe a vehicle contains evidence of criminal activity, United States v. Ross, 456 U.S. 798, 820-21 (1982), authorizes a search of any area of the vehicle in which the evidence might be found." Gant, 129 S.Ct. at 1721; see Ross, 456 U.S. at 825 ("If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search."). In short, if police have probable cause to search a vehicle, "then that probable cause extends to justify the search of *every part* of the vehicle, including the trunk, and any containers found therein that may conceal the contraband." United States v. Carrera, 1992 U.S. App. Lexis 13279, at *4-5 (6th Cir. May 29, 1992) (citing Ross, 456 U.S. at 825). Therefore, once police have smelled the odor of marijuana emanating from within a vehicle, they may search every part of that vehicle and any containers located inside of it in which marijuana might be concealed.

In this case, the Court finds that Officers Lowe and Berglof had reasonable suspicion of ongoing traffic violations that justified stopping the 4-Runner driven by the Defendant. Both officers observed the Defendant driving erratically and Officer Lowe testified that he observed the Defendant driving 17 m.p.h. in excess of the posted speed limit. The Defendant did not challenge

10

the legitimacy of the officers' reason for stopping his vehicle at the time of the stop, and he does not challenge it now.

Next, the Court finds that Officer Lowe's and Officer Berglof's detection of the odor of marijuana emanating from within the 4-Runner provided them with probable cause to search the entirety of the vehicle. Officer Lowe and Officer Berglof both gave unequivocal and uncontroverted testimony that they unmistakably smelled the odor of marijuana emanating from within the 4-Runner. The Defendant offered no evidence to the contrary and did not impeach or otherwise cast doubt on the officers' testimony.[4] The Court finds the officers' testimony to be credible. Accordingly, the Court finds that Officer Lowe's search of the 4-Runner for marijuana was supported by probable cause. See Crumb, 287 Fed. App'x at 514; Carrera, 1992 U.S. App. Lexis 13279, at *4-5. The Court also specifically finds that Officer Lowe had probable cause to open and search the backpack because it might have contained marijuana. See Carrera, 1992 U.S. App. Lexis 13279, at *4-5. Because the search of the 4-Runner and the constituent search of the backpack were supported by probable cause, they did not violate any rights guaranteed to the Defendant by the Fourth Amendment.

---

[4] The Defendant did establish during cross-examination of Officer Lowe that neither Officer Lowe nor Officer Berglof discovered any marijuana or marijuana-related paraphernalia beyond the residue, crumbs, and seeds found in the Defendant's pocket. This fact is not significant to the Court's analysis. As discussed *supra,* detection of the odor of marijuana is, by itself, sufficient to provide probable cause for a search. Whether any marijuana was in fact discovered during the search is inapposite. The Court recognizes that the Defendant may have been attempting to encourage the inference that the lack of discovery of any marijuana or marijuana-related paraphernalia casts doubt upon the truthfulness of the officers' testimony that they smelled marijuana emanating from within the 4-Runner in the first place–essentially arguing, "How could they smell marijuana if it was not there?" The Court is not persuaded by this reasoning. Further, the Court notes that Officer Lowe did not fully search the 4-Runner. He suspended his search as soon as he discovered the "bomb-like device" and neither he nor Officer Berglof ever resumed searching the vehicle for marijuana.

11

### B. Consent

Having concluded that probable cause existed for a warrantless search of the 4-Runner, the Court declines to make a factual finding on the question of whether the Defendant and/or Mr. Kenebrew consented to a search.

### III. CONCLUSION

After carefully considering the evidence introduced during the course of the suppression hearing and reviewing the relevant legal authorities, the Court finds that the rights guaranteed to the Defendant by the Fourth Amendment were not violated. The Court concludes that the items discovered during the search of the vehicle driven by the Defendant at the time of his arrest should not be suppressed. Therefore, it is **RECOMMENDED** that the Defendant's Motion to Suppress **[Doc. 50]** be **DENIED**.[5]

                                                             Respectfully Submitted,

                                                             s/ C. Clifford Shirley, Jr.
                                                             United States Magistrate Judge

---

[5] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see United States v. Branch, 537 F.3d 582, 587 (6th. Cir. 2008); see also Thomas v. Arn, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).